UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

WANDA ANN LAWSON,                      )
                                       )
              Plaintiff,               )
                                       )
v.                                     )      No.: 3:11-CV-285-TAV-HBG
                                       )
RANDY WHITE, Individually and          )
in his Capacity as Director of the     )
Monroe County Emergency Medical Service, )
THE MONROE COUNTY EMERGENCY            )
MEDICAL SERVICE and MONROE COUNTY,     )
                                       )
              Defendants.              )

## MEMORANDUM OPINION AND ORDER

This is a civil rights action brought pursuant to Title VII of the Civil Rights Act of
1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.,* and the Tennessee Human Rights Act
("THRA), Tenn. Code Ann. §§ 4-21-301, *et seq.* Plaintiff alleges that she was terminated
from her employment with the Monroe County Emergency Medical Services ("EMS") in
retaliation for reporting that she was sexually harassed by another EMS employee.
Plaintiff's complaint names Randy White, individually and in his official capacity as
Director of the Monroe County EMS[1] and Monroe County, Tennessee as Defendants.

Before the court is Defendant Randy White and Monroe County's motion for
summary judgment, to which Plaintiff has responded. The Court has carefully considered

---

[1] Monroe County EMS is an agency of Monroe County, Tennessee.

the parties' pleadings and supporting documents, all in light of the controlling law. For the reasons which follow, Defendants' motion for summary judgment is denied.

## I.     Background

Plaintiff was employed as a paramedic for Monroe County's EMS in January of 2006. She began working under the EMS's former director Brad Smith. In August of 2009, Plaintiff was sexually harassed by her co-worker, Joe Hall. Plaintiff reported Hall's harassment to Smith who then terminated Hall following Lawson's complaint [Doc. 1].

At the time these events occurred, Defendant White was employed by iCare EMS, a privately-owned ambulance service in McMinn County. While White was employed with iCare, he hired and worked with Joe Hall [Doc. 21].

In August of 2010, Monroe County elected a new mayor, Tim Yates. Yates took office and appointed White to serve as the new EMS director. As part of the transition of the new administration, certain County employees were instructed to submit resumes and applications for consideration of continued employment. Approximately 50-60 former EMS employees, including Plaintiff, submitted applications for continued employment [Doc. 1]. White reviewed the resumes of these individuals and conducted interviews. White based his hiring recommendations on the applicants' resume, application, and interview, as well as his own prior personal experience working with some of the applicants. White did not have access to the applicants' personnel files at the time he

conducted the interviews [Doc. 21]. Of these individuals, three were terminated by White, including Plaintiff. In addition, White rehired Hall for an EMS position [Doc. 1].

White recommended against retaining Plaintiff based on communications he had with the administrator at East Tennessee Health Care ("ETHC"), Van Bergstrom, regarding complaints against Plaintiff by patients and staff at the facility. The Bergstrom letter references complaints lodged by an ETHC staff member and patient of ETHC. According to Bergstrom, Plaintiff was verbally disrespectful to ETHC employees and made aggressive or offensive physical contact with both a facility resident and a facility employee on one occasion. Both of the alleged incidents occurred before White was appointed as EMS director. Upon receipt of this letter, Plaintiff alleges that White did not investigate further with ETHC. Moreover, White did not discuss the ETHC letter with former director Smith or verify with Plaintiff whether the alleged complaints had any merit. Smith had previously investigated the complaints and determined that the complaints were unfounded. Plaintiff asserts that an investigation by White would have disclosed that the alleged incidents had no basis in fact. *Id.*

White made the decision not to retain Plaintiff. At the time he made that decision, White knew that Plaintiff had reported that she was sexually assaulted by Hall, but believed that her complaint about Hall was false [Doc. 19-2].

## II.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and

3

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any

4

genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

## III.    Analysis

Defendants assert that Plaintiff cannot establish a causal connection between her reporting sexual harassment in August of 2009 and her termination in August of 2010. Further, Plaintiff cannot show a relationship between Hall and White that would have any bearing on whether Plaintiff was retained as an EMS employee.  Finally, Defendants argue that White had a legitimate, nondiscriminatory reason for terminating Plaintiff.

Plaintiff, on the other hand, submits the record establishes that she was retaliated against because of the protected activity in which she had engaged.  White was aware that Plaintiff had complained of sexual harassment by Hall prior to White's decision not to retain Plaintiff.  White and Hall were friends and had worked together prior to White hiring Hall for the Monroe County EMS position.  White hired Hall despite learning that Hall had been terminated by Monroe County for sexual harassment.  White believed Plaintiff's complaint of sexual harassment by Hall was untrue.  Plaintiff argues that when the evidence is viewed in the light most favorable to her, there is sufficient evidence for the jury to find that she was terminated by Defendants in retaliation for having made a protected complaint of sexual harassment as an employee of Monroe County's EMS.  As such, Defendants' actions were in violation of Title VII and the THRA.

5

### A. Prima Facie Case

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) that she engaged in activity protected by Title VII; (2) that this exercise of protected rights was known to the defendant; (3) that the defendant thereafter took adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action. *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999.) Claims under the THRA are analyzed in the same manner as those under Title VII. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 16, 31 (Tenn. 1996).

Defendants do not challenge the first three elements of Plaintiff's *prima facie* case. Defendants focus their argument on the fourth requirement – whether a causal connection exists between the protected activity and the termination. Defendants submit that Plaintiff cannot establish a causal connection between her reporting sexual harassment to Smith in August of 2009 and her termination in August of 2010.

### B. Temporal Proximity

A causal link can be shown by either of two methods: (1) through direct evidence; or (2) through knowledge coupled with a closeness in time that creates an inference of causation. However, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence. *Nguyen v. City of Cleveland,* 229 F.3d 559, 566 (6th Cir. 2000). *See Muhammad v. Close,* 379 F. 3d 413, 417-18 (6th Cir. 2004) (noting proximity may be "significant enough to constitute

indirect evidence of a causal connection so as to create an inference of retaliatory motive").

Defendants argue that Plaintiff cannot establish causation as a matter of law because the time between her protected activity and her discharge was approximately one year. However, the Court finds the passage of time between White's knowledge of Plaintiff's complaint and her discharge does indicate close temporal proximity. White learned of Plaintiff's protected activity when he was appointed by the newly-elected mayor in August of 2010. Within weeks of taking office he terminated Plaintiff. Thus, the temporal proximity between White's learning of Plaintiff's protected activity and his termination of her is approximately two weeks, which is sufficient to create an inference of retaliatory motive.

In addition, Plaintiff testified that Hall told her that he and White were friends and that Hall looked forward to working with White at Monroe County. Further, the record shows White hired Hall to work for iCare. White then hired Hall to work for Monroe County EMS despite his knowledge that Hall had been discharged by Monroe County for sexual harassment. White admittedly believed Hall had been falsely accused by Plaintiff. White never discussed the sexual harassment allegation with Plaintiff or the former EMS director. Viewing these circumstances in a light most favorable to Plaintiff, a jury could infer that White hired Hall because they were friends and that White terminated Plaintiff in retaliation for filing a claim of sexual harassment against Hall.

A jury could also find that White's rehiring of 50-60 former EMS employees, but not Plaintiff, as further evidence of causation. White reviewed the resumes of these individuals and conducted interviews. Of the 50-60 applicants, only three were not retained. Plaintiff was terminated despite working for Monroe County EMS under Smith for over four years. White never discussed Plaintiff's past performance at Monroe County with Smith prior to his termination of Plaintiff. Again, viewing these facts in a light most favorable to Plaintiff, a jury could infer that White's termination of Plaintiff was causally related to his knowledge of her sexual harassment complaint against Hall.

## C.    Pretext

Defendants rely upon Bergstrom's letter and phone call to support their asserted legitimate nondiscriminatory reason for terminating Plaintiff. Plaintiff argues that there is sufficient proof in the record to show that White failed to make a reasonably informed and considered decision when relying on Bergstrom's phone call and letter to justify her termination.

Once a plaintiff establishes the four elements composing a *prima* facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action against the employee. *Fuhr v. Hazel Park Sch. Dist.,* 710 F.3d 668, 674 (6th Cir. 2013). If the employer offers a legitimate, non-retaliatory reason, the employee then has the burden of demonstrating by a preponderance of the evidence that the proffered reason is merely pretext. *Id.* at 675. Pretext may be shown either directly by persuading the trier of fact that a discriminatory reason motivated the employer or indirectly by showing that

8

the employer's proffered explanation is unworthy of credence. *Manzer v. Diamond Shamrock Chems Co.,* 29 F.3d 1078, 1082 (6th Cir. 1994). A plaintiff must produce sufficient evidence from which a jury could reasonably reject the employer's explanation and infer that the employer intentionally discriminated against the plaintiff. *Johnson v. Kroger Co.,* 319 F.3d 858, 866 (6th Cir. 2003). At the summary judgment stage, the Court is to determine whether there is sufficient evidence to create a genuine issue of material fact to present to the jury. *Macy v. Hopkins Co. Sch. Bd. Of Ed.,* 484 F.3d 357, 364 (6th Cir. 2007).

Here, Plaintiff has shown that the ETHC complaints against her were investigated by Smith, who found them to be meritless. Further, Plaintiff denies that these incidents occurred. White acknowledges that the alleged incidents at ETHC were brought to the attention of Smith prior to White being appointed EMS director and that Smith investigated the complaints and determined that the complaints were unfounded. White never discussed the allegations contained in the ETHC letter with Plaintiff. Yet, White hired Hall who had been discharged for sexual harassment. Viewing these facts in a light most favorable to Plaintiff, a jury could find that since the complaints had been brought to the attention of and investigated by Smith, and since Smith had concluded they were unfounded, White's termination of Plaintiff was not actually based on the ETHC complaints.

The Court finds that Plaintiff has established a *prima facie* case of retaliation for her report of sexual harassment and she has established that there are material issues of

9

fact in dispute whether Defendants' stated reason for her termination is pretext. Plaintiff has presented evidence which establishes a question of fact regarding White's motivation and knowledge of Plaintiff's charge of sexual harassment at the time he decided not to consider plaintiff for continued employment with EMS. Since the trial court is not to resolve issues of fact in deciding a motion for summary judgment, the determination of whether the circumstances give rise to an inference of retaliation must be determined by a jury in this case. It is not the province of the court to decide what inferences should be drawn from the evidence. *Southmayd v. Apria Healthcare Inc.,* 412 F. Supp. 2d 848, 862-63 (E.D. Tenn. 2006). Accordingly, the Court finds that Defendants are not entitled to summary judgment on Plaintiff's claims and their motion is **DENIED.**

## IV. Conclusion

For the reasons stated herein, Defendant's motion for summary judgment [Doc. 15] is **DENIED.**

**IT IS SO ORDERED.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE